UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

JOHN WESLEY KIMBROUGH, III,

Plaintiff,

v.

BRIENNA SCHNEEGAS *et al.*,

Defendants.

CAUSE NO. 3:21-CV-364 DRL-MGG

OPINION AND ORDER

John Wesley Kimbrough, III, a prisoner without a lawyer housed at Indiana State Prison, filed a complaint against a doctor, two nurses, and the company that employs them because he is unhappy with the care he has received at the prison for a painful medical condition. ECF 2. He has also filed a motion for a preliminary injunction. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Under 28 U.S.C. § 1915A, the court still must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against an immune defendant.

    A.    *Mr. Kimbrough's Allegations that Rhiannon Schneegas, Dr. Nancy Marthakis, Deanna Laughlin, and Michael Mitchief were Deliberately Indifferent to His Medical Needs.*

In November 2020, Mr. Kimbrough began having sharp pains down the back of his legs and in his hip. ECF 3 at 1-2. By mid-December, standing was difficult. *Id.* at 2.

Due to past experiences with the medical staff at ISP, he initially avoided seeking medical help. *Id.* at 5. However, on December 19, 2019, Correctional Officer Flemming recognized that he needed medical assistance and called to have Mr. Kimbrough examined. *Id.* at 6. Mr. Kimbrough saw Nurse Deanna Laughlin and described his pain to her. *Id.* She consulted with Dr. Marthakis and, after that consultation, provided Tylenol and instructions on exercises for back pain. ECF 2-1 at 10-11. Mr. Kimbrough told Nurse Laughlin that Tylenol does not work. She responded by saying, "I know, you need an anti-inflammatory but that it is all I can do for you right now." ECF 3 at 6.

When Officer Flemming observed that Mr. Kimbrough was still in pain three days later, she asked what the medical staff had done to help him. ECF 2 at 6. Mr. Kimbrough said basically nothing, and Officer Flemming then called the medical department and insisted that Mr. Kimbrough be seen again. *Id.* He was taken to the medical department in a wheelchair and seen by Lacey Gorske, Nurse Rhiannon Schneegas, and Jackie Monaco. *Id.* Mr. Kimbrough asked how his situation gets fixed. Nurse Schneegas responded by indicating that, "[i]t doesn't, you suffer through it like everyone else." ECF 2 at 6, 40. He was given a seven-day course of prednisone and Naproxen. *Id.* at 6. He was instructed to continue with the exercises. *Id.*; ECF 2-1 at 14-15. Mr. Kimbrough tried to do the exercises, but they caused more pain. ECF 2 at 7. Some of the exercises were too painful to do at all. *Id.*; ECF 2-1 at 31.

On December 27, 2020, Mr. Kimbrough filed a request for health care. ECF 2 at 7. In his request, he indicated that he had taken his sixth dose of prednisone, that it had not helped, that he could barely stand for five minutes, and that he had pain when he moved

2

from standing to sitting. *Id.* He indicated that he needed "an appropriate evaluation and diagnostic testing so that adequate medical treatment [could] be rendered." *Id.*

He was seen two days later by Nurse Schneegas. ECF 2 at 7-8; ECF 2-1 at 16-17. She informed him that he had been appropriately evaluated. ECF 2 at 7-8. Nurse Schneegas contacted Dr. Marthakis and, at the doctor's direction, provided Mr. Kimbrough with an injection of Solu-Medrol (an anti-inflammatory) and Toradol (a pain reliefer). *Id.* at 8. He was referred to Dr. Marthakis for follow up. *Id.*

On December 30, Mr. Kimbrough saw Dr. Marthakis.[1] ECF 2 at 8-9; ECF 2-1 at 18-20. She offered Mr. Kimbrough a walker, but he refused. ECF 2 at 8-9. She provided another seven days of prednisone and two weeks of Naproxen. *Id.* He explained the pain he experienced while doing the exercises she had prescribed, and she instructed him to continue doing the exercises. *Id.* And she ordered that he be provided with another injection of Solu-Medrol and another injection of Toradol. *Id.* at 9. Nurse Schneegas was to administer the injections. Though the doctor ordered that both medications be administered, Nurse Schneegas ignored the doctor's orders and only provided Mr. Kimbrough with the injection of Solu-Medrol. ECF 2-1 at 21-22. Prior to injecting him, she commented that "[t]his is a little pain for coming to prison." ECF 2 at 9.

---

[1] Mr. Kimbrough takes issue with being charged for this visit. ECF 2 at 7-8. He believes that, according to the IDOC's policies, he should not have been charged. However, the Constitution does not require free medical care. *Poole v. Isaacs*, 703 F.3d 1024, 1027 (7th Cir. 2012). Furthermore, a violation of an IDOC policy does not amount to a Constitutional violation. *See Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003)("However, 42 U.S.C. § 1983 protects plaintiffs from constitutional violations, not violations of state laws or, in this case, departmental regulations and police practices.").

Dr. Marthakis ordered x-rays of Mr. Kimbrough's spine, and those were performed on December 31, 2020. ECF 3 at 2; ECF 2 at 10; ECF 2-1 at 23. The x-ray report indicates that Mr. Kimbrough has intervertebral disc narrowing at L4-5 and L5-S1 consistent with mild degenerative disc disease. ECF 2-1 at 23.

On January 14, 2021, Mr. Kimbrough submitted another health care request form. ECF 2 at 10-11; ECF 2-1 at 28. That form indicated that Mr. Kimbrough was still in extreme pain and that the prednisone had not helped. ECF 2-1 at 28. He also reported a new symptom: "whenever my sciatic nerve causes pain in my right hip – tingling and numbness can be felt in my right big toe, portions of my foot, my calf, and a small portion of the back of my thigh." ECF 2 at 11; ECF 2-1 at 28.

Mr. Kimbrough was seen by Nurse Block on January 20, 2021. ECF 2 at 11; ECF 2-1 at 24-26. The nurse called Dr. Marthakis and, after speaking with her, offered Mr. Kimbrough a wheelchair or walker. ECF 2 at 11. She also offered to have Mr. Kimbrough moved to housing that is closer to the dining hall. *Id.* Mr. Kimbrough refused these offers because he found using an assistive device embarrassing; he wanted to continue to walk and did not want to become comfortable with his new symptoms.[2] *Id.* He was prescribed another Toradol injection, though it did not help. *Id.* Mr. Kimbrough indicates that he was again referred to Dr. Marthakis for follow up, although notes from the visit do not indicate that a referral was made. ECF 2 at 12; ECF 2-1 at 24-26.

---

[2] He ultimately did use a wheelchair when needed, despite his initial refusal.

Several days passed without Mr. Kimbrough seeing Dr. Marthakis. Mr. Kimbrough asked Nurse Brenda, who was passing out medications, to inquire about his appointment. ECF 2 at 12. When she did, Nurse Schneegas responded with simply "We know who Kimbrough is." *Id.* Still the follow-up appointment was not scheduled. On January 30, 2021, Mr. Kimbrough asked Officer Flemming to call to find out what was going on because his pain was terrible. *Id.* Officer Flemming spoke to Nurse Schneegas who indicated that she would not schedule Mr. Kimbrough to see anyone because he just wanted shots and did not want to do his exercises. ECF 2 at 13.

He submitted an emergency grievance on February 1, 2021. ECF 2 at 13; ECF 3 at 7; ECF 2-1 at 53-55. He was told that his situation was not an emergency. ECF 2 at 15-16.

On February 2, 2021, Mr. Kimbrough saw Nurse Brenda. ECF 2 at 14. She indicated that she told Nurse Schneegas that they needed to do something for Mr. Kimbrough because he was walking very badly. *Id.* Nurse Schneegas responded by saying that all he wants is shots. *Id.* She again refused to schedule Mr. Kimbrough to be seen by a provider. *Id.*

On February 3, 2021, Mr. Kimbrough's aunt called in an effort to obtain care for him. ECF 2 at 15. Following that call, an email was sent from the Warden's office to medical staff indicating that Mr. Kimbrough needed to be seen. ECF 2 at 16. On February 5, 2021, Mr. Kimbrough saw Dr. Marthakis again. *Id.* She explained the results of the x-rays. She also explained that, without an MRI, she could not know the condition of the discs themselves. *Id.* Dr. Marthakis indicated she believed that the discs are rubbing against the nerve that runs along his spine and causing the nerve to become inflamed. *Id.*

5

at 17. She indicated she would treat the inflammation, muscle spasms, and pain with several medications. *Id.* One of those medications was Cymbalta. *Id.* Mr. Kimbrough asked about side-effects he should be aware of and she indicated there were none. *Id.* She sought approval to provide Mr. Kimbrough with Cymbalta, Naproxen, and Flexeril. *Id.* She also requested physical therapy. *Id.* She indicated that physical therapy was a requirement before she could request either an MRI or a consultation with a specialist. *Id.* at 17-18.

On February 9, 2021, Mr. Kimbrough began receiving Cymbalta. *Id.* at 18. It left him feeling drowsy and drugged. *Id.* He says it also interfered with his sleep and caused vivid dreams and night sweats. *Id.* The next day, he learned that Dr. Mitchief denied both the request for Naproxen and the request for Flexeril. *Id.* at 19. After three days of Cymbalta, Mr. Kimbrough decided that he could not continue taking it due to the side effects. *Id.*

On February 11, 2021, Mr. Kimbrough's aunt called the Warden's office again. *Id.* She inquired about the denial of Naproxen and Flexeril. *Id.* at 19-20. On February 13, 2021, Mr. Kimbrough began receiving both mediations. *Id.* at 20. But, by February 20, 2021, he had his last dose of Flexeril, and his medications were limited to Naproxen, ibuprofen, and Tylenol. *Id.* He began taking large doses of these medications in an attempt to control pain. *Id.* at 20-21. He told his aunt, who called the Warden's Office again on March 4, 2021. In response, he was taken via wheelchair to see Dr. Marthakis the same day. *Id.* at 21-22. He told her about the side effects from the Cymbalta and his pain. *Id.* at 22. She offered more prednisone, but he refused because it had already been tried and it did not

help. *Id.* He was also worried about the side effects, especially the suppression of his immune system in the middle of the COVID-19 pandemic. *Id.* Dr. Marthakis offered to move Mr. Kimbrough to G-dorm so he could have Flexeril three times a day and Solu-Medrol injections twice a day. *Id.* Mr. Kimbrough refused because quarantined inmates are housed in that dorm and he did not want to risk getting COVID-19. *Id.* Dr. Marthakis's treatment plan consisted of trying to control inflammation and pain with Tylenol, Solu-Medrol, meloxicam, and Flexeril. *Id.* She wanted to try these treatments for six to eight weeks prior to requesting an MRI. *Id.* at 22-23. She indicated that, if she requested an MRI before trying medications and physical therapy, Dr. Mitchief would deny it. *Id.* at 23. She further indicated that if the treatment did not work, she would request the MRI in six to eight weeks. *Id.* Mr. Kimbrough asked for crutches to help him stand. *Id.* She agreed but indicated that they should only be used for emergencies. *Id.* He was instructed to come to the medical department twice a day for Solu-Medrol injections, at the same time that diabetic patients report for injections. *Id.*

Beginning on March 5, 2021, he reported to the medical department twice a day for his injections. *Id.* at 24. For his initial appointments, he was pushed to the medical department in a wheelchair. *Id.* But on the afternoon of March 6, 2021, Nurse Schneegas was in charge, and she indicated that Mr. Kimbrough should not come at the same time as the diabetics. *Id.* When Mr. Kimbrough arrived, Nurse Schneegas indicated that he was not authorized to use the wheelchair; she indicated he should be using the crutches instead. *Id.* On the afternoon of March 7, 2021, Nurse Schneegas told officers that, if they brought Mr. Kimbrough over in a wheelchair, she would take it away from him. *Id.* at 25.

7

Mr. Kimbrough walked to the medical department though it caused him excruciating pain. *Id.* at 26.

Mr. Kimbrough asked Nurse Schneegas why she told the officers they could not bring him in a wheelchair. *Id.* He explained that using his crutches to come to the medical department was contrary to the treatment plan that he and Dr. Marthakis had discussed. *Id.* at 26-27. And he accused Nurse Schneegas of interfering with that plan. *Id.* at 27. He ultimately threatened to sue Nurse Schneegas, referencing his recent settlement of another lawsuit. *Id.* She responded by indicating that she "heard about [his] lawsuit." *Id.*

On March 8, 2021, Nurse Schneegas again informed officers not to let Mr. Kimbrough come to the medical department in a wheelchair. *Id.* at 28. As Mr. Kimbrough contemplated his options, he understood that Nurse Schneegas was setting it up so she could say he refused care. *Id.* The medications were not helping and caused disagreeable side effects. *Id.* at 28, 30. An officer called the medical department to ask if Mr. Kimbrough could come in a wheelchair, and Nurse Laughlin reiterated that Mr. Kimbrough could not come in a wheelchair. *Id.* at 28-29. The prospect of a painful walk was too much, so Mr. Kimbrough opted not to walk to the medical department that day. *Id.* On March 10, 2021, Mr. Kimbrough received a refusal form that appears to have been signed by him, but he asserts that he did not sign it. *Id.* at 29; ECF 2-1 at 32.

On March 13, 2021, Mr. Kimbrough began receiving Flexeril again, but he did not receive meloxicam. ECF 2 at 30. On March 16, 2021, he learned that Dr. Mitchief did not approve the meloxicam, and he approved the Flexeril for only seven days. *Id.* At the

8

conclusion of that seven days, Mr. Kimbrough's only medication to manage pain was Tylenol four times per day. *Id.* at 31.

On April 1, 2021, Mr. Kimbrough met with Dr. Marthakis for a chronic care visit for another condition. ECF 2 at 32. During that meeting, he asked her to request an MRI or send him to a specialist because six to eight weeks of treatment had failed. *Id.* She refused because he needed to try physical therapy first. *Id.* She offered him a Toradol shot, but he declined because prior Toradol injections had not helped. *Id.* She offered prednisone too, and he also declined it because he was worried about the side effects and because it did not help his condition when previously prescribed. *Id.* at 32-33.

On April 13, 2021, Mr. Kimbrough developed a new symptom: a sharp pulsing pain in his right hip that caused his leg to twitch. *Id.* at 35. As of May 10, 2021, Mr. Kimbrough reports that he has not received any further treatment or any physical therapy. ECF 3 at 4; ECF 2 at 38.

Under the Eighth Amendment, inmates are entitled to constitutionally adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish liability, a prisoner must satisfy both an objective and subjective component by showing: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to that medical need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). Deliberate indifference means that the defendant "acted in an intentional or criminally reckless manner, i.e., the defendant must

9

have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005). For a medical professional to be held liable for deliberate indifference to an inmate's medical needs, he or she must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008).

That said, "the Constitution is not a medical code that mandates specific medical treatment." *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996). "Whether and how pain associated with medical treatment should be mitigated is for doctors to decide free from judicial interference, except in the most extreme situations." *Id.* Inmates are "not entitled to demand specific care [nor] entitled to the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Moreover, adequate care does not require the total alleviation of pain. *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996) ("To say the Eighth Amendment requires prison doctors to keep an inmate pain-free in the aftermath of proper medical treatment would be absurd.").

A delay in providing treatment can constitute deliberate indifference when it causes unnecessary pain or suffering. *Arnett v. Webster*, 658 F.3d 742, 752-53 (7th Cir. 2011); *Grieveson v. Anderson,* 538 F.3d 763, 779 (7th Cir. 2008). Here, giving Mr. Kimbrough the benefit of the inferences to which he is entitled at this stage of the case, he has alleged facts from which it can be plausibly inferred that Nurse Rhiannon Schneegas, Dr. Nancy

10

Marthakis, Nurse Deanna Laughlin, and Dr. Michael Mitchief were each deliberately indifferent to his serious medical needs. He will be granted leave to proceed on these claims.

In addition, the Clerk will be directed to add Warden Ron Neal as a defendant, and Mr. Kimbrough will be granted leave to proceed against Mr. Neal in his official capacity for injunctive relief to receive constitutionally adequate medical care for the painful condition that developed in November 2020. *Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011).

B. *Mr. Kimbrough's Allegation that Nurse Schneegas Retaliated Against Him.*

Mr. Kimbrough's complaint asserts that Nurse Schneegas retaliated against him when she denied him care. To prevail on his First Amendment retaliation claim, [Mr. Kimbrough] must show that (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the Defendants' decision to take the retaliatory action." *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012) (quotation marks and citations omitted). Here, Mr. Kimbrough notes that Nurse Schneegas was aware of a lawsuit filed against other medical staff (ECF 2 at 27), but he has not plead facts from which it can be plausibly alleged that her knowledge of a lawsuit that she was not named in had any bearing on her decisions regarding Mr. Kimbrough's medical care for a separate medical condition. Thus, he may not proceed on this claim.

11

C. *Allegations against Wexford.*

Mr. Kimbrough has also sued Wexford of Indiana, LLC, a private company that is under contract to provide medical care to inmates housed at Indiana State Prison. A private company performing a state function can be held liable to the same extent as a municipal entity under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). *See Rice v. Corr. Med. Servs.*, 675 F.3d 650, 675 (7th Cir. 2012) (*Monell* framework applies to private company providing medical care at correctional facility). But a corporation "cannot be held liable under § 1983 on a *respondeat superior* theory." *Calhoun v. Ramsey*, 408 F.3d 375, 379 (7th Cir. 2005). Rather corporate liability exists only "when execution of a [corporation's] policy or custom . . . inflicts the injury." *Id.*

Mr. Kimbrough alleges that Wexford has a policy of requiring medical personnel to pursue less expensive alternatives prior to more expensive treatments. ECF 3 at 7; ECF 2 at 54-58. He alleges that these policies reduce and delay access to adequate care, and caused the defendants to refuse to send Mr. Kimbrough to a specialist though it was clear he was suffering from a serious medical condition they were unable to accurately diagnose and treat. He specifically takes issue with the collegial review process. This process requires a treating physician recommending outside testing or consultations to discuss the condition and alternative, lower-cost treatment plans with the Regional Medical Director, who frequently overrules the recommendations of the treating physician in favor of less expensive alternatives, even where necessary to provide constitutionally adequate medical care.

The policies Mr. Kimbrough describes are not, on their face, unconstitutional. As noted by the Seventh Circuit, "administrative convenience and cost may be, in appropriate circumstances, *permissible factors* for correctional systems to consider in making treatment decisions." *Roe v. Elyea*, 631 F.3d 843, 863 (7th Cir. 2011) (emphasis in original). The Constitution is only violated when those factors are considered "*to the exclusion of reasonable medical judgment* about inmate health." *Id.* (emphasis in original). *See e.g. Barrow v. Wexford Health Servs., Inc.*, 816 F. Appx. 1, 5 (7th Cir. 2020) (noting that Wexford's policies of "collegial review" and "cost minimization" were not facially unconstitutional and affirming dismissal of inmate's claim because he did not provide evidence he was injured by treatment decisions that were driven by cost-savings). Mr. Kimbrough alleges that, in practice, the collegial review process routinely results in the denial of necessary care, and that the policy resulted in him being denied constitutionally adequate care in that it discouraged the treating physician from making referrals and, when referrals were made, they were overruled. While further factual development may demonstrate that his care was not constitutionally inadequate or that the care he received (or lack thereof) was not due to the alleged policy, Mr. Kimbrough's complaint plausibly alleges that the policies he describes resulted in constitutionally inadequate care.

    D.    *Motion for Preliminary Injunction.*

As a final matter, Mr. Kimbrough's request for a preliminary injunction must be addressed. "[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). "A plaintiff seeking a

preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

As to the first prong, "the applicant need not show that it definitely will win the case." *Illinois Republican Party v. Pritzker*, 973 F.3d 760, 763 (7th Cir. 2020). However, "a mere possibility of success is not enough." *Id.* at 762. "A strong showing . . . normally includes a demonstration of how the applicant proposes to prove the key elements of its case." *Id.* at 763 (quotation marks omitted).

As to the second prong, "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with . . . injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. "Mandatory preliminary injunctions – those requiring an affirmative act by the defendant – are ordinarily cautiously viewed and sparingly issued [because] review of a preliminary injunction is even more searching when the injunction is mandatory rather than prohibitory in nature. *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020) (quotation marks omitted).

Here, Mr. Kimbrough requests that the court order that his condition be evaluated and, if necessary, treated by a qualified specialist. ECF 3 at 1. He is entitled only to adequate medical care as required by the Constitution. There may be multiple methods of providing this care, and Mr. Kimbrough cannot dictate how it is provided.

> The PLRA circumscribes the scope of the court's authority to enter an injunction in the corrections context. Where prison conditions are found to violate federal rights, remedial injunctive relief must be narrowly drawn, extend no further than necessary to correct the violation of the Federal right, and use the least intrusive means necessary to correct the violation of the Federal right. This section of the PLRA enforces a point repeatedly made by the Supreme Court in cases challenging prison conditions: Prison officials have broad administrative and discretionary authority over the institutions they manage.

*Westefer v. Neal*, 682 F.3d 679, 683 (7th Cir. 2012) (quotation marks, brackets, and citations omitted). Therefore, injunctive relief – if granted – would be limited to requiring that Mr. Kimbrough be provided with constitutionally adequate medical care for his condition, as required by the Eighth Amendment. Mr. Kimbrough's motion for a preliminary injunction will be taken under advisement. The Warden will be required to respond to the motion and Mr. Kimbrough will have an opportunity to file a reply.

For these reasons, the court:

(1) GRANTS John Wesley Kimbrough, III's Motion to Correct Record (ECF 6) and DIRECTS the Clerk to correct the pagination of his Complaint (ECF 1) and Motion for Preliminary Injunction (ECF 3) as explained in the motion;

(2) DIRECTS the Clerk to add the Warden of the Indiana State Prison in his official capacity as a defendant;

(3) GRANTS John Wesley Kimbrough, III leave to proceed against the Warden of Indiana State Prison in his official capacity for injunctive relief to provide constitutionally adequate treatment for the painful condition that developed in November 2020, as required by the Eighth Amendment;

(4) GRANTS John Wesley Kimbrough, III leave to proceed against Nurse Rhiannon Schneegas, Dr. Nancy Marthakis, Nurse Deanna Laughlin, and Regional Medical Director Michael Mitchief in their individual capacity for compensatory and punitive damages for providing constitutionally inadequate treatment for the painful condition that developed in November 2020, in violation of the Eighth Amendment;

(5) GRANTS John Wesley Kimbrough, III leave to proceed against Wexford of Indiana, LLC for compensatory and punitive damages for following a policy of denying necessary medical care that resulted in him receiving constitutionally inadequate care for the painful condition that developed in November 2020, in violation of the Eighth Amendment

(6) DISMISSES all other claims;

(7) DIRECTS the Clerk to request Waiver of Service from (and if necessary, the United States Marshals Service to serve process on) the Warden of Indiana State Prison at the Indiana Department of Correction, with a copy of this order, the complaint (ECF 2), and the motion for preliminary injunction (ECF 3) pursuant to 28 U.S.C. § 1915(d);

(8) DIRECTS the Clerk to request Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Nurse Rhiannon Schneegas, Dr. Nancy Marthakis, Nurse Deanna Laughlin, Regional Medical Director Michael Mitchief, and Wexford of Indiana, LLC, at Wexford of Indiana, LLC, with a copy of this order, the complaint (ECF 2), and the motion for preliminary injunction (ECF 3) pursuant to 28 U.S.C. § 1915(d);

(9) DIRECTS the Clerk to fax or email a copy of the request for waiver of service, this order, the complaint (ECF 2), and the motion for preliminary injunction (ECF 3) to the Warden of the Indiana State Prison;

(10) TAKES the Motion for Preliminary Injunction (ECF 3) UNDER ADVISEMENT;

(11) ORDERS the Warden of Indiana State Prison to respond to the Motion for Preliminary Injunction (ECF 3) and file an affidavit or declaration with the court, explaining how John Wesley Kimbrough, III's painful condition is being treated in a manner that comports with the Eighth Amendment's requirements by **June 23, 2021**;

(12) GRANTS John Wesley Kimbrough, III, until **July 14, 2021**, to file a reply to the Warden's response;

(13) ORDERS the Indiana Department of Correction and Wexford of Indiana, LLC to provide the full name, date of birth, and last known home address of any defendant who does not waive service, if it has such information; and

(14) ORDERS, pursuant to 42 U.S.C. § 1997e(g)(2), Warden of Indiana State Prison, Nurse Rhiannon Schneegas, Dr. Nancy Marthakis, Nurse Deanna Laughlin, Regional Medical Director Michael Mitchief, and Wexford of Indiana, LLC to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED.

June 7, 2021 *s/ Damon R. Leichty*
Judge, United States District Court