UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

JOHN WESLEY KIMBROUGH, III,

Plaintiff,

v.

BRIENNA SCHNEEGAS *et al.*,

Defendants.

CAUSE NO. 3:21-CV-364 DRL-MGG

OPINION AND ORDER

John Wesley Kimbrough, III, a prisoner without a lawyer housed at Indiana State Prison, filed a complaint against two doctor, two nurses, and the company that employs them because he is unhappy with the care he has received at the prison for a painful medical condition. ECF 2. He was granted leave to proceed against the Warden of Indiana State Prison in his official capacity[1] for injunctive relief to provide adequate treatment for the painful condition that developed in November 2020, as required by the Eighth Amendment. ECF 7. He was also granted leave to proceed against Nurse Rhiannon Schneegas, Dr. Nancy Marthakis, Nurse Deanna Laughlin, and Regional Medical Director Michael Mitchief in their individual capacities for compensatory and punitive damages for providing allegedly inadequate treatment for the painful condition that developed in November 2020, in violation of the Eighth Amendment. *Id.* And, he was granted leave to proceed against Wexford of Indiana, LLC for compensatory and punitive

---

[1] The Warden was added as a defendant by the Clerk at the court's direction.

damages for following a policy of denying necessary medical care that resulted in him receiving allegedly inadequate care for the painful condition that developed in November 2020, in violation of the Eighth Amendment. *Id.*

Mr. Kimbrough also filed a motion for preliminary injunction. ECF 3. Mr. Kimbrough's motion for preliminary injunction was taken under advisement. ECF 7. The Warden has responded to the motion, and Mr. Kimbrough has filed a reply. ECF 13; ECF 23. The motion is now fully briefed and ripe for adjudication.

As noted in this court's screening order, "a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

As to the first prong, "the applicant need not show that it definitely will win the case." *Illinois Republican Party v. Pritzker*, 973 F.3d 760, 763 (7th Cir. 2020). However, "a mere possibility of success is not enough." *Id.* at 762. "A strong showing . . . normally includes a demonstration of how the applicant proposes to prove the key elements of its case." *Id.* at 763 (quotation marks omitted).

As to the second prong, "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with . . . injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to

such relief." *Winter*, 555 U.S. at 22. "Mandatory preliminary injunctions – those requiring an affirmative act by the defendant – are ordinarily cautiously viewed and sparingly issued [because] review of a preliminary injunction is even more searching when the injunction is mandatory rather than prohibitory in nature. *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020) (quotation marks omitted).

Mr. Kimbrough requests an injunction ordering the warden to have him evaluated and, if necessary, treated by a qualified specialist. ECF 3 at 1. Mr. Kimbrough is entitled only to adequate medical care as required by the Constitution. There may be multiple methods of providing this care, and Mr. Kimbrough cannot dictate how it is provided.

> The PLRA circumscribes the scope of the court's authority to enter an injunction in the corrections context. Where prison conditions are found to violate federal rights, remedial injunctive relief must be narrowly drawn, extend no further than necessary to correct the violation of the Federal right, and use the least intrusive means necessary to correct the violation of the Federal right. This section of the PLRA enforces a point repeatedly made by the Supreme Court in cases challenging prison conditions: Prison officials have broad administrative and discretionary authority over the institutions they manage.

*Westefer v. Neal*, 682 F.3d 679, 683 (7th Cir. 2012) (quotation marks, brackets, and citations omitted).

Mr. Kimbrough began having sharp pains down the back of his legs and in his hip in November 2020. ECF 3 at 1-2. The specifics of his care are detailed in the court's screening order (ECF 7) and are summarized here only as necessary to determine whether his *current* treatment necessitates a preliminary injunction.

After Mr. Kimbrough's first medical visit for his pain, he was prescribed Tylenol and given instructions on exercises for back pain. ECF 2-1 at 10-11. When he was still in

pain three days later, he was given a seven-day course of prednisone and instructed to continue with the exercises. ECF 2-1 at 14-15. He reported that the exercises caused him more pain, and some were too painful to do at all. ECF 2 at 7; ECF 2-1 at 31.

When Mr. Kimbrough was almost finished with the prednisone, he filed a request for healthcare, indicating that the drug had not helped, he could barely stand for five minutes, and that he had pain when he moved from standing to sitting. ECF 2 at 7. Two days later, he was seen in the medical unit and given injections of Solu-Medrol (an anti-inflammatory) and Toradol (a pain reliever). ECF 2 at 7-8; ECF 2-1 at 16-17. The next day he saw the doctor in person, and he received another seven days of prednisone, two weeks of Naproxen, and an injection of Solu-Medrol. ECF 2 at 8-9. He refused her offer of a walker. ECF 2 at 8; ECF 2-1 at 18-20.

X-rays of Mr. Kimbrough's spine performed on December 31, 2020, revealed intervertebral disc narrowing at L4-5 and L5-S1 consistent with mild degenerative disc disease. ECF 3 at 2; ECF 2 at 10; ECF 2-1 at 23.

On January 14, 2021, Mr. Kimbrough indicated that he was still in extreme pain, prednisone had not helped, and his symptoms were worsening. ECF 2 at 10-11; ECF 2-1 at 28. Mr. Kimbrough was seen by a nurse on January 20, 2021, and given another Toradol injection. ECF 2 at 11; ECF 2-1 at 24-26. Mr. Kimbrough was offered a wheelchair or walker. ECF 2 at 11. He was also offered housing closer to the dining hall. *Id.* He declined both offers. *Id.*

On February 5, 2021, Mr. Kimbrough saw the doctor again. ECF 2 at 16. The doctor explained what the x-rays showed and that her plan was to treat the inflammation,

4

muscle spasms, and pain with several medications. *Id.* at 17. The doctor sought approval for Cymbalta, Naproxen, and Flexeril. *Id.* She also requested physical therapy. *Id.* She indicated that physical therapy was a requirement before she could request either an MRI or a consultation with a specialist. *Id.* at 17-18.

The requests for Naproxen and Flexeril were denied, but four days later, Mr. Kimbrough began receiving Cymbalta. *Id.* at 18-19. It left him feeling drowsy and drugged. *Id.* at 18. It also interfered with his sleep and caused vivid dreams and night sweats. *Id.* After taking Cymbalta for three days, Mr. Kimbrough decided he could not continue taking it due to the side effects. *Id.*

Four days later, after Mr. Kimbrough's aunt placed a call to the Warden's office, Mr. Kimbrough began receiving Naproxen and Flexeril. *Id.* at 19-20. Only seven days of Flexeril were prescribed. *Id.* By February 20, 2021, Mr. Kimbrough's only medications available for pain were Naproxen, ibuprofen, and Tylenol. *Id.* He began taking large doses of these medications in an attempt to control pain. *Id.* at 20-21.

On March 4, 2021, Mr. Kimbrough saw the doctor again. *Id.* at 21-22. She offered more prednisone, but he refused because it had already been tried and it did not help. *Id.* The doctor also offered to move Mr. Kimbrough to a dorm where he could have Flexeril three times a day and Solu-Medrol injections twice a day. *Id.* Mr. Kimbrough declined. *Id.* The doctor's treatment plan consisted of trying to control inflammation and pain with Tylenol, Solu-Medrol, meloxicam, and Flexeril. *Id.* Mr. Kimbrough was provided with crutches at his request. *Id.* at 23. *Id.* He was instructed to come to the medical department twice a day for Solu-Medrol injections, when diabetic patients report for injections. *Id.*

Beginning on March 5, 2021, he reported to the medical department twice a day for his injections. *Id.* at 24. Mr. Kimbrough was using a wheelchair even though the doctor had not directed him to do so. *Id.* One of the nurses indicated that she would not see him for his injection if he came to medical in a wheelchair. *Id.* at 28. By March 8, 2021, the pain of walking to the medical department was so great that Mr. Kimbrough skipped his injection. *Id.*

On March 13, 2021, Mr. Kimbrough began receiving Flexeril again, but he did not receive meloxicam because it was not approved. ECF 2 at 30. He received only seven days of Flexeril. *Id.*

On April 1, 2021, Mr. Kimbrough met with the doctor regarding another condition, buy his back pain was also addressed. ECF 2 at 32. She offered him a Toradol shot, but he declined because prior Toradol injections had not helped. ECF 2 at 32. She offered prednisone too and he also declined it because he was worried about the side effects and because it did not help his condition when previously prescribed.[2] *Id.* at 32-33. Mr. Kimbrough was also offered a low-calorie diet to address his obesity, but he declined the diet, indicating that he would think about and would try to reduce his weight on his own. ECF 13-2 at 68. The doctor declined Mr. Kimbrough's request that she order an MRI or send him to a specialist because he had not yet tried physical therapy. ECF 2 at 32. A request for on-site physical therapy was submitted that day. ECF 13-2 at 64.

---

[2] The medical records state that Mr. Kimbrough was also offered Tylenol and Solu-Medrol on April 1, 2021, but Mr. Kimbrough disputes this. ECF 13-2 at 68-69; ECF 23 at 8.

6

As of May 10, 2021, Mr. Kimbrough reported that he has not received any further treatment. ECF 3 at 4; ECF 2 at 38. However, on June 30, 2021, Mr. Kimbrough began physical therapy. ECF 13-2 at 76. Mr. Kimbrough describes the physical therapist as knowledgeable, compassionate, and passionate about his work. ECF 23 at 5-6. He thoroughly explained to Mr. Kimbrough why he was experiencing symptoms and what stretches he should do to alleviate his pain. *Id.* He recognized that Mr. Kimbrough is eager to get better. *Id.*

Under the Eighth Amendment, inmates are entitled to constitutionally adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish liability, a prisoner must satisfy both an objective and subjective component by showing: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to that medical need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). Deliberate indifference means that the defendant "acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005). For a medical professional to be held liable for deliberate indifference to an inmate's medical needs, he or she must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually

did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008). "A prisoner may establish deliberate indifference by demonstrating that the treatment he received was blatantly inappropriate." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014) (internal quotations and citations omitted)

That said, "the Constitution is not a medical code that mandates specific medical treatment." *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996). "Whether and how pain associated with medical treatment should be mitigated is for doctors to decide free from judicial interference, except in the most extreme situations." *Id.* Inmates are "not entitled to demand specific care [nor] entitled to the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Moreover, constitutionally adequate care does not require the total alleviation of pain. *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996) ("To say the Eighth Amendment requires prison doctors to keep an inmate pain-free in the aftermath of proper medical treatment would be absurd."). Although the Eighth Amendment does not entitle an inmate to a specific form of treatment, prison medical staff cannot simply continue with a course of treatment that is known to be ineffective. *Greeno*, 414 F.3d at 654-55. A delay in providing treatment can constitute deliberate indifference when it causes unnecessary pain or suffering. *Arnett v. Webster*, 658 F.3d 742, 752-53 (7th Cir. 2011); *Grieveson v. Anderson,* 538 F.3d 763, 779 (7th Cir. 2008).

On June 30, 2021 – after Mr. Kimbrough filed his lawsuit and the warden was ordered to respond to the motion for preliminary injunction – Mr. Kimbrough began physical therapy. It cannot be said that the defendants are persisting in the path of ineffective treatment at this time, even if Mr. Kimbrough is able to prove that they did so

8

in the past. Mr. Kimbrough still has pain, but there are not facts before the court that permit an inference that Mr. Kimbrough's current treatment plan is blatantly inappropriate.

Mr. Kimbrough would like to be seen by a specialist. He is fearful that, if the root cause of his pain is not addressed, his condition may deteriorate and he may suffer long-term adverse consequences, including incontinence and paralysis. Mr. Kimbrough also wants an MRI, because on more than one occasion the doctor has mentioned that an MRI is necessary to assess the condition of the discs. But determining if either an MRI or a visit with a specialist is needed is a matter of medical judgment. *See Pyles*, 771 F.3d at 411-12. Intrusion into a medical provider's determination that it is not necessary for an inmate to see a specialist is warranted when the need "was known by the treating physician or would have been obvious to a lay person[.]" *Id.* at 412. But there is no evidence before the court that the treating physician knew a specialist was needed or that it would have been obvious to a lay person that a specialist was needed here. Focusing only on Mr. Kimbrough's current care, the court cannot say that Mr. Kimbrough has demonstrated a sufficient likelihood of success on the merits to warrant a preliminary injunction.

For these reasons, the motion for preliminary injunction (ECF 3) is DENIED.

SO ORDERED.

July 26, 2021                                    *s/ Damon R. Leichty*
                                                 Judge, United States District Court